131 N.J. Super. 470 (1974)
330 A.2d 594
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ALFRED COLE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 19, 1974.
Decided December 19, 1974.
Before Judges MATTHEWS, FRITZ and BOTTER.
Mr. Stanley Marcus, designated counsel, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney).
*471 Mr. Richard W. Berg, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
PER CURIAM.
Defendant appeals his conviction of attempted larceny, after trial by jury, on the sole ground that the trial judge improperly refused defendant's request to have a polygraph examination ordered as "the prosecutor arbitrarily refused to agree." The apparent (but not real) and engaging simplicity of such a ground camouflages the overtones which both complicate the determination of the issue and mandate an affirmance of the judgment below.
Defendant is not unaware of New Jersey's historic rejection of polygraph evidence. State v. Walker, 37 N.J. 208 (1962), cert. den. 371 U.S. 850, 83 S.Ct. 89, 9 L.Ed.2d 86 (1962); State v. Driver, 38 N.J. 255 (1962); State v. Peetros, 45 N.J. 540 (1965); State v. Kavanaugh, et al., 52 N.J. 7 (1968), cert. den. sub nom. Matzner v. State, 393 U.S. 924, 89 S.Ct. 254, 21 L.Ed.2d 259 (1968); State v. Royster, 57 N.J. 472 (1971), cert. den. 404 U.S. 910, 92 S.Ct. 235, 30 L.Ed.2d 182 (1971). He seeks nevertheless to widen the small aperture of State v. McDavitt, 62 N.J. 36 (1972). At trial, defense counsel, conceding his inability to offer the authority of any New Jersey case for his motion to compel the prosecutor "to allow my client to submit himself to a polygraph examination," candidly advised the court, "What I am seeking essentially is an extension of State v. McDavitt."
At the outset it is notable that this effort was launched (a) without accompaniment by any tender of proof respecting the reliability of the polygraph, and (b) in the face of the assertion by the prosecutor that since his investigation indicated defendant had been drinking, he could not in any event agree to the likelihood of reliability of the polygraph in the circumstances here present. Defendant sought an "evidentiary hearing" on reliability (presumably both absolutely and in the context of the fact of the drinking here present), but did so on a "let's find out" basis. We are not confronted *472 with a situation where the trial judge improperly refused an offer of proof. Properly he refused to let his courtroom become a classroom in which the defense and the prosecution might initially ascertain whether our knowledge of the reliability of polygraphy has increased since State v. Walker, supra. This deficiency in the proposal of defendant is all the more remarkable because this was the second time the case was tried; the first trial resulted in a jury that was unable to agree.
We might well affirm on the easy ground that defendant failed to demonstrate, in the circumstances of this case, that the prosecutor was arbitrary in his refusal to agree to a polygraph examination, and that, therefore, the discretion of the trial judge was not mistakenly exercised. However, such a succinct statement might invite two erroneous conclusions: First, that McDavitt imposes upon law enforcement officials the obligation to consent to a polygraph examination unless nonconsent can be justified; and, second, that McDavitt constitutes a judicial pronouncement of demonstrated reliability of the polygraph absent a stipulation by both parties as to its use. Neither of these postulates is sound.
In view of the exceptional circumstances of McDavitt and the consistency with which our Supreme Court has continued to reject polygraph testing as evidential, we conceive McDavitt to concern itself more with the effect of stipulations designed to reach the truth in the trial court than with polygraphs, and this despite expression therein taking judicial notice "of the fact that polygraph testing is used extensively by police and law enforcement agencies, government agencies and private industry for investigative purposes. * * * Its growing use as a scientific tool cannot be doubted." In essence McDavitt holds that while polygraph testing has not yet been demonstrated to be sufficiently reliable to be used evidentially, its increased use justifies enforcement by the court of a freely made stipulation between the parties relating to that use.
*473 Any other interpretation would, in effect, compel law enforcement authorities to accede to the use of the polygraph unless they could produce an objection better than that its reliability had not yet been proved. We do not think this far sweep was the intent of McDavitt.
With respect to polygraph testing, the record before us requires us to say, as was early said in State v. Walker, supra:
In the present case the defendant failed to offer any evidence indicating that there is at this time a general scientific acceptance of the reliability of a polygraph. * * *
* * * [W]e do not have sufficient knowledge to say the polygraph has or has not attained that degree of accuracy to warrant our taking judicial notice that it is or is not a reliable aid in learning the truth. [37 N.J. at 216]
See also State v. Melvin, 65 N.J. 1, 20-21 (1974).
The law of some other states and that which has been written in some texts is a totally insufficient foundation to undergird our taking judicial notice of the reliability of polygraph testing, contrary to prior holdings by our Supreme Court, in the absence of proof.
Affirmed.