142 N.J. Super. 575 (1976)
362 A.2d 578
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MARGY ELLEN SMITH, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 23, 1976.
Decided July 1, 1976.
*576 Before Judges FRITZ, SEIDMAN and MILMED.
Messrs. Broderick & Grather, attorneys for appellant (Mr. Edward M. Coleman on the brief).
Mr. William F. Hyland, Attorney General of New Jersey, attorney for respondent (Mr. Glenn E. Kushel, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by FRITZ, P.J.A.D.
A substantial question in the matter before us, in which defendant appeals from her conviction on jury trial for embezzlement (N.J.S.A. 2A:102-5), relates to the admissibility of a polygraph examination to which defendant submitted herself. She contends that her timely objection to testimony relating to the polygraphic testing was erroneously overruled. The State argues that the polygraph results were admissible by virtue of a "release," previously prepared, evidently by the police authorities, and submitted to defendant before she had obtained counsel, and application of the doctrine of State v. McDavitt, 62 N.J. 36 (1972). We are satisfied that the "release" failed to incorporate an essential element of the McDavitt criteria *577 whereby the polygraphic evidence should have been excluded, and we reverse.
Prior to McDavitt polygraph evidence was simply inadmissible in a criminal case. Rejection was based on the failure of the procedure to attain "scientific acceptance as a reliable and accurate means of ascertaining truth or deception." State v. Driver, 38 N.J. 255, 261 (1962); see State v. Melvin, 65 N.J. 1 (1974). Suggestions appeared that the results might be different upon a showing of "a high degree of recognition" of the "reliability" of such "scientific aids." State v. Walker, 37 N.J. 208, 215 (1962), cert. den. 371 U.S. 850, 83 S.Ct. 89, 9 L.Ed.2d 86 (1962).
The breakthrough came in McDavitt where it was said:
This Court will take judicial notice of the fact that polygraph testing is used extensively by police and law enforcement agencies, government agencies and private industry for investigative purposes. McCormick, Evidence, (2d ed. 1972), § 207, p. 507. Its growing use as a scientific tool cannot be doubted. "The Truth about Lie Detectors in Business," The New York Times, Oct. 29, 1972, § 3 at 3, col. 1. * * * [62 N.J. at 45]
The prior rule of exclusion was relaxed to the extent that
* * * in a criminal case when the State and defendant enter into a stipulation to have defendant submit to a polygraph test, and have the results introduced in evidence, such stipulation should be given effect. Cf. State v. Arnwine, 67 N.J. Super. 483 (App. Div. 1961). Polygraph testing has sufficient probative value to warrant admission under these circumstances. [62 N.J. at 46; emphasis supplied]
The Supreme Court was aware, however, that scientific acceptance of polygraph testing is in its infancy and that much remains to be proved. Accordingly, it directed that, prior to admission of evidence relating to the polygraph examination
* * * it must appear that the stipulation is clear, unequivocal and complete, freely entered into with full knowledge of the right to refuse the test and the consequences involved in taking it. It must also appear that the examiner is qualified and the test administered in accordance with established polygraph techniques. [62 N.J. at 46]
*578 In the matter before us the document with which we are concerned, denominated a release by the police officer who secured its execution, read thusly:
The title of the piece of paper on the first page is New Jersey State Police Polygraph Unit, State Police, Flemington, date Thursday, January 24, 1974. I hereby voluntarily request and authorize Louis Jasmine, polygraphist, to interview me with respect to the following criminal investigation: moneys missing from the Ditschman Motor Sales Company, Inc. I understand that Louis Jasmine, polygraphist, is an officer of the New Jersey State Police. I also request and authorize Louis Jasmine, polygraphist, to conduct a polygraph examination upon me and if necessary to interview me following the polygraph examination.
I further specifically waive any and all rights to privacy that I have and may have with respect to the interview and to the taking of the polygraph examination. The following are my constitutional rights. By signing my name at the bottom of this form I acknowledge that I have read fully these rights and understand them. One, I have the right to remain silent and do not have to say anything at all. Two, anything I say to Louis Jasmine, polygraphist, during either the interviews or the polygraph examination can be used against me in a court of law. Three, I have the right to talk to a lawyer before I submit to the interviews and the polygraph examination. Four, if I cannot afford a lawyer the Court will appoint one to respresent [sic] me without cost to me. I do not have to answer any questions or submit to the polygraph examination until a lawyer is appointed and advises me.
Five, I understand that I have the right to stop the polygraph examination at any time. I understand that I can stop answering questions at any time.
Page two, I fully understand the above statement of my rights. I am willing to answer all questions and make any statements I may want to give. I do not want a lawyer. I understand and know what I am doing. No promises or threats have been made to me and no pressure of any kind has been used against me. I understand that anything I say to Louis Jasmine, polygraphist, whether during the interview or the polygraph examination can be used against me in a court of law. I hereby authorize the New Jersey State Police to disclose both orally and in writing the results and opinions of the polygraph examination and statements made by me to all interested persons.
I further understand that such results may prove unfavorable to me. Fully understanding this I release forever, hold free from all harm, liability or damage to me as a result of the polygraph examination, results and opinions the State of New Jersey together with its officers, employees. I request that the interviews and polygraph examination begin at this time. Signed Margy Smith.
*579 The State argues that there has been compliance with the standards of McDavitt. Acceptance of this argument requires a willingness to equate a recognition that what "I say * * * can be used against me in a court of law" with a clear, unequivocal and complete agreement that the results of the polygraph test may be introduced in evidence. Without regard for the commendable concern of McDavitt that the essentials appear in the stipulation and not be left to subsequent surmise, we believe that the reach of the equation related above is too great for these developmental days of polygraph evidence.
We are not persuaded that the full intended effect of defendant's consent was communicated to her by the choice of words, irrespective of the historic origin of the phrase, "can be used against [you] in a court of law." The distinct possibility is that defendant was left with a misimpression[1] or, at best, with no understanding regarding the admission into evidence of the polygraph test result. Such a state of affairs clearly contravenes McDavitt and its insistence that the stipulation be "clear, unequivocal and complete."
Beyond this, we are wholly satisfied that McDavitt contemplates much more than a Miranda-type (Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)) warning-and-waiver situation. To us it is clear that McDavitt's willingness to depart from the historic rejection of polygraph evidence is based upon acceptance by the court of a specific, clear, unequivocal and complete meeting of minds and agreement between the State and an individual that an agreed polygraph testing will be received in evidence upon an offer by either party, irrespective of the result. No semblance of such an undertaking by the State appears in the "release" in this matter.
Finally, we are persuaded not only by McDavitt but by common sense to walk slowly and carefully in these early *580 polygraph days and until more universal and reliable scientific acceptance has been achieved. Cf. State v. Cary, 49 N.J. 343 (1967), on remand 99 N.J. Super. 323 (Law Div. 1968), remanded 53 N.J. 256 (1969), aff'd 56 N.J. 16 (1970).
Therefore, we reiterate the admonition of McDavitt to the effect that for the present, at least, the stipulation not only must demonstrate clearly defendant's certain awareness of all the consequences involved in taking the polygraph test but it must, as well, commit the State to its reciprocal obligation to permit the results to be received in evidence irrespective of the outcome of the test. The surest way to accomplish these ends is to include among its provisions a specific agreement that the results of the testing as expressed in the opinion of experts, whether inculpatory or exculpatory, may be introduced as evidence by either party to the stipulation. See State v. Baskerville, 139 N.J. Super. 389, 390 (App. Div. 1976), motion for leave to appeal granted 70 N.J. 279 (1976).
In the circumstances of this case where our opinion determines once and for all the inadmissibility of the polygraph evidence at the retrial, we need not, and so do not, reach the question as to whether McDavitt is to be applied without distinction to pre-indictment and post-indictment situations.
Defendant also argues that her confession should have been excluded because of "a serious question as [to] its voluntariness." Since a retrial is required we leave the determination of that question to the trial judge in the light of the proofs which will be adduced on the new trial.
Nor need we consider defendant's final ground, that there was error in the charge of the court "with reference to certain inferences that can be drawn from the evidence." The evidence will, of course, be reviewed anew by the trial judge in the preparation of his charge on the retrial.
Reversed and remanded for a new trial.
NOTES
[1] Compare State v. Cook, 47 N.J. 402, 417, n. 7 (1966).