STATE OF NEW JERSEY, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT, v. VINCENT BASKERVILLE, DEFENDANT-RESPONDENT AND CROSS-APPELLANT.

Argued March 22, 1977—Decided May 11, 1977.

*Mr. Richard Mackay,* Assistant Prosecutor, argued the cause for plaintiff-appellant and cross-respondent (*Mr. James T. O'Halloran,* Hudson County Prosecutor, attorney; *Mr. Mackay,* of counsel and on the brief).

*Mr. Eric A. Summerville* argued the cause for defendant-respondent and cross-appellant (*Mr. Jon P. Campbell,* on the brief).

*Mr. Ezra D. Rosenberg,* Assistant Deputy Public Defender, argued the cause for *amicus curiae* Public Defender (*Mr. Stanley C. VanNess,* Public Defender, attorney; *Mr. David R. Arrajj,* Assistant Deputy Public Defender, of counsel; *Mr. Rosenberg,* of counsel and on the brief).

*Mr. David S. Baime,* Deputy Attorney General, argued the cause for *amicus curiae* Attorney General (*Mr. Wil-*

liam *F. Hyland,* Attorney General of New Jersey, attorney; *Mr. Baime* and *Mr. Richard W. Berg,* Deputy Attorney General, of counsel; *Mr. Edgar F. Devine, Jr.,* Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

CLIFFORD, J. We granted motions on behalf of the State and defendant for leave, respectively, to appeal and cross-appeal from the judgment of the Appellate Division incorporating two separate determinations. 139 *N. J. Super.* 389 (1976). The first ruling was to the effect that given the ambiguous nature of a stipulation[1] prepared by the State governing the administering of a polygraph examination to defendant and the use at trial of the results thereof, defendant can produce his own expert at trial "to testify as to his conclusions and evaluations of the polygraph data" introduced by the State. 139 *N. J. Super.* at 393. The second was that, again under the terms of the stipulation, the State is not limited to use of the polygraph results for impeachment purposes only but can introduce those results in direct evidence, notwithstanding defendant's refusal to testify. *Id.* at 394. Because significant policy considerations are involved, we invited the submission of briefs and oral argument by the Attorney General and the Public Defender as *amici curiae.*

We now affirm substantially for the reasons given by the Appellate Division, subject only to the following brief amplifying comments.

I

The State argues here, as it did below, that to permit defendant to produce at trial his own polygraph expert, one McMahon, to contradict the agreed-upon polygraphist's conclusions and to dispute his procedures amounts to an

---

[1]The text of the stipulation is annexed hereto as Appendix A.

enlargement of the stipulation's provisions. While it acknowledges that defendant may cross-examine as to the designated expert's evaluation, the State nevertheless asserts that defendant, with the assistance of counsel, has effectively waived his right to introduce his own expert's analysis.

We are in complete agreement with the Appellate Division's holding that the stipulation does not unequivocally bind defendant to the designated examiner's test results, 139 *N. J. Super.* at 392; that fairness requires that defendant be permitted to refute the designated examiner's evaluation, *id.;* and that there was insufficient evidence of a knowing and intelligent waiver by defendant of his Sixth Amendment right to call witnesses to testify in his favor, *id.* at 393. This is the position not only of the defendant and *amicus* Public Defender, but also of the *amicus* Attorney General. We quote from the latter's brief:

In the final analysis, the stipulation is absolutely silent on the issue of whether defendant can present Mr. McMahon's testimony. The Attorney General submits that in the absence of a clear and unequivocal provision barring extrinsic evidence on the stipulated examiner's findings, there are two compelling reasons requiring the admission of such evidence. First, the nature of scientific testimony in general, and especially of polygraphic testimony, requires the fullest possible exploration at trial of the expert's opinion. Second, defendant's fundamental right to present witnesses in his favor must be honored.

As to the first reason, the Attorney General submits that it would be "inappropriate" to bind either party to the designated polygraph examiner's evaluation because, as his brief so straightforwardly puts it, "[t]he simple fact is he may have erred in reaching his conclusion", and that "[t]o hold that his opinion on truth or deception is unchallengeable would cloak him with the 'mystic infallibility' [see, *e.g., United States v. Addison,* 162 *U. S. App. D. C.* 199, 202, 498 *F.* 2d 741, 744 (D.C. Cir. 1974)] that has concerned the courts." We agree. The criminal justice system's basic premise that factual issues should be

resolved by the fact-finder, be it jury or judge, would be severely undermined by a rule allowing an irrefutable opinion by an expert witness on what is the ultimate issue in the case.

As to the second reason for allowing the admission of defendant's expert's evidence, namely, defendant's right to present witnesses to testify in his favor, we focus on the fundamental nature of that right as to a criminal defendant. See *Washington v. Texas,* 388 *U. S.* 14, 16, 87 *S. Ct.* 1920, 1921, 18 *L. Ed.* 2d 1019, 1021 (1967). Certainly this right should not be defeated in the absence of a clear and unequivocal waiver, which, as we have said, is not included in the present stipulation. We need not, at this point, express any opinion as to whether an unambiguous waiver of either the right to cross-examine or to submit independent proof of the type sought to be introduced here, or both, would run afoul of public policy. For purposes of the present case, on remand defendant's expert will be allowed to testify once his personal knowledge and expertise have been established. *Evid. R.* 19; see also *Evid. R.* 56. That testimony will be limited to a refutation of the designated examiner's evaluation. We leave for another day resolution of the question of whether, under a stipulation similar to the instant agreement, a defendant might be permitted to introduce evidence of results of a separate test administered by his own examiner.

## II

Defendant urges on his cross-appeal that the State should not be permitted to introduce the results of the polygraph test in its direct case but only to impeach defendant's in-court testimony. *Amicus* Public Defender has not presented argument on this point. As indicated, the Appellate Division approved of the State's express intention to "use the results of the polygraph test to corroborate the testimony of the victim of the armed robbery, whether de-

fendant testifies or not." 139 *N. J. Super.* at 394. It based
this determination on the stipulation's provision that the
test results could be "used against" defendant "in a court
of law," pointing out that defendant's argument would
allow this proviso to be rendered meaningless and the stipu-
lation terminated if he chose not to testify. *Id.*

Defendant's argument on this point centers on the state-
ment in *State v. McDavitt*, 62 *N. J.* 36 (1972), that evi-
dence of a polygraph test result "is not direct proof of a
defendant's guilt or innocence of the crime charged," but
simply opinion evidence of an expert tending to indicate
only "whether or not the subject was telling the truth when
tested." *Id.* at 47. Defendant takes this to be an express
limitation on the use of polygraph evidence solely for at-
tacking credibility.

But this narrow reading is unwarranted. The quoted
language plainly means that defendant's "failure" of the
polygraph test is not *ipso facto* the equivalent of his guilt;
it is, however, probative of the issue of guilt or innocence
and may be considered, along with other evidence in the
case, as bearing on that issue. How forcefully it bears
thereon depends on the questions asked. If the polygrapher
concludes defendant is being deceptive when, in response to
a direct question, he asserts that he did not commit the
crime, then surely the expert's opinion that defendant is
lying may be considered by the jury as proof that de-
fendant did in fact commit that crime. In that circum-
stance the making of a false statement would be, in itself,
evidence of guilt. *Cf. U. S. ex rel. Hill v. Pinto,* 394 *F.*
2d 470, 473 (3d Cir. 1968); see also McCormick, Evi-
dence § 273, at 660–62 (2d ed. E. Cleary 1972).

Additionally, we observe that were the defendant's con-
tention to be accepted, then he would be unable to intro-
duce polygraph results favorable to him unless he were to
take the stand and unless the prosecutor were to cross-
examine him on the basis of recent fabrication. See *Evid.*
*R.* 20.

## III

We do not here undertake to "widen the small aperture of *State v. McDavitt," supra (State v. Cole,* 131 *N. J. Super.* 470, 471 (App. Div. 1974)). Our consideration herein of the admissibility of polygraph test results is circumscribed by the factual context in which the question arises and particularly by the terms of the stipulation entered into by the State and defendant. In this area we continue to "walk slowly and carefully in these early polygraph days * * *." *State v. Smith,* 142 *N. J. Super.* 575, 579–80 (App. Div. 1976).

The judgment of the Appellate Division is hereby Affirmed.

## APPENDIX A

It is hereby stipulated and agreed by and between the State of New Jersey, by EDWIN STERN, ACTING Prosecutor of Hudson County and defendant MR. VINCENT BASKERVILLE and his counsel Mr. JOSEPH A. PANEPINTO, ESQ. that MR. VINCENT BASKERVILLE shall submit himself to a polygraph examination for the purpose of inquiring into the charges alleged in the above stated indictment(s) or accusation(s) and subjects related thereto, such examination to be conducted by a qualified examiner, to be designated by the State and made known to MR. VINCENT BASKERVILLE and his counsel MR. JOSEPH A. PANEPINTO, ESQ. before such stipulation is entered into, in accordance with well-established polygraph techniques.

It is further understood by MR. VINCENT BASKERVILLE and his counsel, MR. JOSEPH A. PANEPINTO, ESQ. that MR. VINCENT BASKERVILLE enters into said agreement freely and willingly, with full knowledge of his absolute right to refuse to be so tested, and that proof of any such refusal cannot and will not be used in any way as evidence against him at trial.

Furthermore, both the State and MR. VINCENT BAS-KERVILLE and his counsel MR. JOSEPH A. PANE-PINTO, ESQ. are fully aware of the consequences of MR. VINCENT BASKERVILLE's submission to such an examination, namely that the results of said testing (that is, the expert opinion of the examiner (and such physical and demonstrative evidence as may be necessary to enlighten the jury as to the basis for his expert opinion including the actual questions asked and the responses made thereto by MR. VINCENT BASKERVILLE) as to the truthfulness or falsity of the responses given by MR. VINCENT BASKERVILLE to questions posed by the examiner during the testing) may be introduced into evidence by either party for the jury's consideration, whether such expert opinion and physical and demonstrative evidence may be inculpatory or exculpatory. Should the expert opinion of the designated polygraph examiner be that the test results, as interpreted by him, are inconclusive regarding the truthfulness or falsity of the responses of MR. VINCENT BAS-KERVILLE to the questions posed during testing, such inconclusive results shall not in any way be admitted into evidence by either the State or the defense. Both the State and MR. VINCENT BASKERVILLE and his counsel MR. JOSEPH A. PANEPINTO, ESQ. further reserve the right to refuse to participate in any further testing in the above stated matter, which shall automatically terminate the stipulation, and no reference shall be made at trial in any manner whatsoever, by either side, to such polygraph testing or the subsequent refusal by either the State or MR. VINCENT BASKERVILLE or MR. JOSEPH PANEPINTO, ESQ., to participate in further testing.

Both the State and MR. V. BASKERVILLE and his counsel, MR. JOSEPH A. PANEPINTO, ESQ. reserve the right, at trial, to explore fully the examiner's background in polygraph training and experience, as bearing on his qualifications as an expert, the equipment and procedures

employed in pre-testing and testing MR. VINCENT BAS-KERVILLE, as well as the nature of the questions asked.

The polygraph expert designated by the State in this matter is MR. BRUCE C. BEST.

*For affirmance*—Chief Justice HUGHES, Justices MOUN-TAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.

*For reversal*—None.