167 N.J. Super. 370 (1979)
400 A.2d 880
STATE IN THE INTEREST OF B.N., JUVENILE-DEFENDANT.
Superior Court of New Jersey, Juvenile and Domestic Relations Court, Cumberland County.
March 22, 1979.
*371 Mr. William P. Doherty, Jr., Cumberland County Prosecutor, for the State (Mr. Daniel Hoffman, Assistant Prosecutor, appearing).
Mr. Basil D. Beck, Jr., for defendant B.N.
KLEINER, J.S.C.
Defendant's motion requires this court to decide whether, under a polygraph stipulation essentially identical to that under consideration in State v. Baskerville, 73 N.J. 230 (1977), a defendant may introduce evidence of results of a separate test administered by his own examiner. *372 This issue was expressly left undecided in Baskerville, supra at 234, and apparently is one of first impression.
The juvenile defendant in this case was charged with inflicting malicious damage on several cemeteries in Cumberland County. On December 18, 1978 the juvenile underwent a polygraph examination administered by his own expert. No stipulation with the prosecutor was entered into as to this polygraph test. On January 8, 1979 the juvenile, with the advice of his lawyer, agreed to submit to a polygraph examination pursuant to a stipulation essentially identical to that in Baskerville, supra, reprinted at 236-238.
The juvenile seeks two-fold relief: (1) to allow defendant's expert at trial to testify as to his conclusions and evaluations of data obtained from the stipulated polygraph examination, and (2) to allow the introduction of evidence of the results of the polygraph administered by his own expert.

I
As to the use of defendant's expert to testify as to his conclusions and evaluations of data obtained from the stipulated examination, State v. Baskerville, supra, is dispositive. There, confronted with a virtually identical stipulation, the Supreme Court held that the stipulation does not unequivocally bind defendant to the designated examiner's test results, 73 N.J. at 233; that fairness requires that defendant be permitted to refute the designated examiner's evaluation, Id., and that there was insufficient evidence of a knowing and intelligent waiver by defendant of his Sixth Amendment right to call witnesses to testify in his favor. Id. Defendant's expert will be allowed to testify once his personal knowledge and expertise have been established pursuant to Evid. R. 19. Id. at 234. The scope of testimony will be limited to a refutation of the stipulated examiner's evaluation.

*373 II
The second part of defendant's motion is, by contrast, more perplexing. A search of the case law of this and other jurisdictions indicates that the issue presented is of first impression.
In State v. Baskerville our Supreme Court specifically stated:
We leave for another day resolution of the question of whether, under a stipulation similar to the instant agreement, a defendant might be permitted to introduce evidence of results of a separate test administered by his own examiner. [at 234]
A criminal defendant's right to present witnesses to testify in his favor is a fundamental right guaranteed by the Sixth Amendment as incorporated into the Fourteenth Amendment's Due Process Clause. Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1977). Certainly this right should not be defeated in the absence of a clear and unequivocal waiver. State v. Baskerville, supra. The present stipulation does not include such a waiver. While the stipulation does contain the following language:
Both the State and B.N. and his counsel Basil Beck further reserve the right to refuse to participate in any further testing in the above stated matter, which shall automatically terminate the stipulation, and no reference shall be made at trial in any manner whatsoever, by either side, to such polygraph testing or the subsequent refusal by either the State or B.N. or ____ to participate in further testing. [Emphasis supplied]
this language does not clearly and unequivocally bar the use at trial of polygraphs administered prior to the execution of the stipulation. Defendant is not unequivocally bound to the designated examiner's test results. He may refute the stipulated evaluation by independent expert testimony. Fundamental fairness requires that the testimony offered to refute the stipulated evaluation may include the results of an independent private polygraph test.
*374 In Baskerville the court quoted from the brief of the amicus Attorney General.
* * * The Attorney General submits that in the absence of a clear and unequivocal provision barring extrinsic evidence on the examiner's findings, there are two compelling reasons requiring the admission of such evidence. First, the nature of scientific testimony in general, and especially of polygraphic testimony, requires the fullest possible exploration at trial of the expert's opinion. Second, defendant's fundamental right to present witnesses in his favor must be honored. [73 N.J. at 233]
The court continued excerpting the amicus brief.
* * * "[t]he simple fact is he [the designated polygraph examiner] may have erred in reading his conclusion", and that "[t]o hold his opinion on truth or deception is unchallengeable would cloak him with the `mystic infallibility'.... that has concerned the courts." [Ibid.]
The court concluded that
The criminal justice system's basic premise that factual issues should be resolved by the factfinder, be it jury or judge, would be severely undermined by a rule allowing an irrefutable opinion by an expert witness on what is the ultimate issue in the case. [Id. at 233-234]
Therefore, in the context of the facts of the present case, defendant's expert, assuming arguendo that the proper foundation can be laid, can use the results of his testing to refute the results of the stipulated test.
"In these early polygraph days," until the polygraph has been shown to have attained the degree of accuracy to warrant taking judicial notice of its reliability as an end in learning the truth, State v. Christopher, 149 N.J. Super. 269 (App. Div. 1977), certif. den. 75 N.J. 24 (1977), defendant must be extended a full opportunity to attack the results of a polygraph examination. And while this ruling in effect may allow as evidence an unstipulated polygraph, such admission is for the limited purpose of refuting *375 the results of the stipulated exam. Cases such as State v. Christopher, supra, are distinguishable on their facts in that there, no stipulation existed.
With knowledge of the language in Baskerville which left undecided the issue presented here, the State did not modify the standard form of stipulation so as to explicitly deal with such a situation. The State having been warned of this uncertainty, and electing to continue using the same form, cannot now seem surprised at the result reached today. The stipulation is to be construed with doubts being resolved against the writer. Therefore this court holds that absent a clear and unequivocal provision barring the use of the results of a private polygraph, such results will be admissible to refute the results of the stipulated polygraph, upon a showing that the unstipulated tests were rendered according to established standards by an examiner with established knowledge and expertise. Evid. R. 19.