STATE OF NEW JERSEY, PLAINTIFF, v. LOUIS FINN, DEFENDANT.

Superior Court of New Jersey
Law Division Somerset County

Decided May 15, 1980.

*Michael C. Kazer,* for defendant (*Sheldon Schiffman,* attorney).

*Allan J. Iskra,* Assistant Prosecutor for the State of New Jersey (*David Linett,* Somerset County Prosecutor, attorney).

MEREDITH, J. S. C.

Defendant, who is indicted on charges of possession of a dangerous weapon, assault with a dangerous weapon and atrocious assault and battery, submitted to a polygraph test administered by the prosecutor's office. Prior to the test defendant and the prosecutor signed an "Agreement and Stipulation" a form prepared by the prosecutor's office, in which it was agreed that the results of the examination would be admissible in evidence at trial of the accused. The form further provided that the results of the polygraph examination would be admissible through the opinion testimony of Lt. James Hoffman, the polygraphist and that

. . . the defendant will not offer testimony of any witness other than Lt. James Hoffman to interpret the test results obtained by Lt. James Hoffman during the polygraph examination.

Before signing the agreement defendant had waived in writing his right to counsel.

Defendant now seeks to suppress the results of the polygraph examination or alternately, to offer his own expert's interpretation of the results. The State argues that defendant has waived his right to call a rebuttal witness, that the waiver was knowingly and voluntarily made, and that it should be enforced.

■ It is the opinion of this court that whether a waiver was knowingly and voluntarily made, that part of the stipulation which precludes defendant from submitting an independent evaluation of polygraph results violates principles of fundamental fairness and should not be given effect. *Cf. State v. Baskerville,* 73 *N.J.* 230, 234 (1977).

Prior to 1972 polygraph evidence was absolutely inadmissible in a criminal case in the state of New Jersey. In that year our Supreme Court relaxed the rule of total exclusion and held that the results of a polygraph test may be introduced at a criminal trial if, prior to the test, defendant and the prosecutor have entered into a proper stipulation to that effect. *State v. McDavitt,* 62 *N.J.* 36 (1972). The court ruled that such a stipulation must be "clear, unequivocal and complete, freely entered into with full knowledge of the right to refuse the test and the consequences involved in taking it." *Id.* at 46.

The Appellate Division in 1976 further defined the criteria of a proper stipulation:

. . . the stipulation not only must demonstrate clearly defendant's certain awareness of all the consequences involved in taking the polygraph test but it must, as well, commit the State to its reciprocal obligation to permit the results to be received in evidence irrespective of the outcome of the test. [*State v. Smith,* 142 *N.J.Super.* 575, 580 (1976)].

In other words, it must be agreed that the results of the examination will be received "upon an offer by either party, irrespective of the result." *Id.* at 579.

The court in *Smith, supra,* suggested that the "surest way" to accomplish the objective set forth in *McDavitt, supra,* was

. . . to include among [the] provisions a specific agreement that the results of the testing *as expressed in the opinion of experts,* whether inculpatory or exculpatory, may be introduced as evidence by either party to the stipulation." [at 580, emphasis supplied]

Clearly, the specific agreement in the present case, which would allow only the State examiner to present and interpret the polygraph results to the factfinder, denies the equality of opportunity contemplated in *Smith, supra.*

In *State v. Baskerville, supra,* our Supreme Court considered a stipulation by defendant and the prosecutor which permitted use of the polygraph evidence in court but was silent on the issue of whether defendant could produce his own expert to testify as to the significance of the polygraph data introduced by the State. While it acknowledged defendant's right to cross-examine the designated polygrapher concerning his evaluation, the State argued that defendant had effectively waived his right to introduce his own expert's analysis and that to permit defendant to introduce such testimony amounted to an enlargement of the stipulation's provisions.

The court held, among other things, that there was insufficient evidence of an effective waiver; more importantly to the present case, the court ruled that fairness required that defendant be permitted to refute the state examiner's interpretation of the polygraph and to introduce his own expert's evaluation.

As the court in *Baskerville* emphasized, the nature of any "scientific" testimony "requires the fullest possible exploration at trial. . . ." 73 *N.J.* at 233. *See also United States v. Addison,* 498 *F*.2d 741, 744 (D.C.Cir. 1974). Especially is this so in the case of polygraph evidence. Polygraph test results are no more than a set of lines and squiggles on the polygraph read-out which record the physiological reactions of the subject when answering questions put to him by the examiner. Unlike a vocabulary test or mathematics examination, the results of which a lay person might be able to evaluate independently, the polygraph read-out is meaningless to the general public. Only through a polygrapher's interpretation can the results be in any real way available to a jury.

It must further be pointed out that the raw results of the polygraph cannot be characterized as right or wrong, good or bad: "The polygraph does not automatically and unerringly disclose a lie by the person being tested." 23 *A.L.R.*2d 1307 (1969). While the polygraph is often referred to as "scientific" evidence, even the expert's initial reading of the results, as well as his or her evaluation, is a matter of opinion. *See United States v. Ridling*, 350 *F.Supp.* 90, 93 (E.D.Mich.1972). Like any matter of opinion, the same "results" may vary as to their meaning from one expert to another.

The process by which the jury assesses the significance of the polygraph is not, therefore, an independent weighing of the results *per se*, but of necessity must be an evaluation of an expert's interpretation of those results and his or her conclusions as to defendant's truthfulness during the polygraph session. Moreover, the jury's evaluation of the expert opinion will very likely be the determinative factor as to the issue of defendant's innocence or guilt. To enforce a stipulation which prevents defendant from introducing rebuttal testimony by his own expert is to deny him the fundamental right to present witnesses and to establish a defense. Such limitation is grossly unfair. *See People v. Reeder*, 65 *Cal.App.*3d 235, 135 *Cal.Rptr.* 421, 425 (1976); *see, also, Washington v. Texas*, 388 *U.S.* 14, 16, 87 *S.Ct.* 1920, 1923, 18 *L.Ed.*2d 1019 (1967).

It is appropriate to comment here that the State has not asserted, nor has the court been able to ascertain, any useful purpose served by the quoted paragraph of the Agreement and Stipulation form. The provision is not necessary to insure the admissibility of the polygraph data. Neither can it be said that the provision is an aid to the sound and effective administration of justice. The provision seems to be simply an attempt to hinder the defense, to tie the hands of the accused once he has submitted to a polygraph.

The State argues that the scope of the waiver in this case is limited since defendant retains the right to cross-examine Lt. Hoffman regarding his interpretation of the test results, and therefore the waiver does not violate principles of fundamental

fairness. Again, because of the nature 'of the evidence, this court is convinced that cross-examination alone is not sufficient to protect defendant's right to a fair hearing.

Despite the ever present possibility of interpretative error, despite the fact that the significance of polygraph evidence is a matter of opinion, there is an acknowledged tendency on the part of juries to overvalue and give undue weight to polygraph testimony and to view the polygrapher as a purveyor of scientific truth. *United States v. Oliver*, 525 *F.*2d 731, 733 (8 Cir. 1975), *cert.* den., 424 *U.S.*973, 96 *S.Ct.* 1477, 47 *L.Ed.*2d 743 (1976); *see, also, United States v. Alexander*, 526 *F.*2d 161, 168 (8 Cir. 1975). "When polygraph evidence is offered . . . at trial, it is likely to be shrouded with an aura of near infallibility, akin to the ancient oracle of Delphi." *Alexander, supra,* at 168. Against such a combination of mysticism and science, a cross-examiner rattles his legal papers in vain. Defendant must be able to present his own equally qualified, equally scientific expert who is conversant with the method and mechanisms of polygraph techniques and who will have standing in the eyes of a jury to criticize or rebut the State's interpretation of the polygraph administered by the Prosecutor.

█ A basic premise of the criminal justice system is that factual issues should be resolved by the factfinder. The court in *Baskerville, supra,* found that to allow an irrefutable opinion by an expert witness on a crucial issue severely undermines that time-honored principle. 73 *N.J.* at 233–234. In the opinion of this court it is no less harmful to our system of justice, even where defendant has agreed to an *ex parte* presentation, to insist that such expert opinion on a crucial issue remain unchallenged.

Obviously a polygraph examiner's opinion, based on "scientific" data, will bear heavily on the ultimate issue reserved for the jury. Any meaningful jury analysis of this "questionable yet highly persuasive evidence" must be performed with a critical and objective approach. *People v. Reeder, supra,* 135 *Cal.Rptr.* at 425. The danger with respect to such testimony is that the

polygraph evidence will overwhelm rather than assist the fact-finder; that the sovereign responsibility of the jury will be subordinated to "misplaced faith in 'scientific proof.'" *Ibid.* If defendant is not allowed to produce his own expert to criticize, clarify or rebut the interpretation of the polygraph by the State's expert, the jury is left with no means of evaluating the interpretation, no way of performing its duty to weigh and deliberate.

To the extent that the polygraph results are accepted as unimpeachable or conclusive by jurors, despite cautionary instructions by the trial judge, the jurors' traditional responsibility to collectively ascertain the facts and adjudge guilt or innocence is preempted. [*United States v. Alexander, supra,* at 168].

To that extent defendant is in effect deprived of a trial by jury.

It is the court's duty to assure that the benefits of the jury system are made available to a defendant who elects to exercise his right to a jury trial. To prevent a possible miscarriage of justice, and in order that defendant in the present case be afforded a fair hearing, the court must refuse to enforce the quoted paragraph of the Agreement and Stipulation. Defendant's expert witness will therefore be permitted to testify; such testimony will be limited to an interpretation and evaluation of the state-administered polygraph.