217 N.J. Super. 182 (1986)
524 A.2d 1348
THE STATE OF NEW JERSEY
v.
MICHAEL MC MAHON, DEFENDANT.
Superior Court of New Jersey, Law Division Union County.
Decided March 18, 1986.
*184 Thomas P. Simon, Assistant Prosecutor, for the State, (John H. Stamler, Union County Prosecutor, Attorney).
James B. Daniels, Assistant Deputy Public Defender, for Defendant, (Thomas S. Smith, Jr., Acting Public Defender, Attorney).
LECHNER, Judge.
The defendant moves before trial to prevent the State from using a stipulated polygraph or in the alternative to permit defendant to submit the results of a prior unstipulated polygraph and to offer the testimony of a polygraph expert retained by defendant. The issues presented are novel in that no reported decision has been brought to the attention of the Court nor have I been able to discover a reported decision on point.[1] For the reasons to be set forth, the motion is denied in all respects.
The defendant was charged in a single count indictment with a first degree robbery (N.J.S.A. 2C:15-1). On January 14, 1986, an investigator employed by the Office of the Public Defender administered a polygraph examination to defendant. In the opinion of this expert, the defendant answered truthfully when he stated he was not involved in the robbery. Thereafter defendant, through his attorney, initiated a campaign of six to eight weeks in duration, including the filing of a motion, to compel the Prosecutor of Union County to agree to administer a polygraph examination to defendant pursuant to a stipulation. As a result of these efforts, defendant, his attorney and the *185 prosecutor agreed a polygraph examination would be administered to defendant.
With the assistance of his attorney, defendant entered into a detailed six page stipulation concerning the polygraph examination to be administered by a polygraphist employed by the Prosecutor. It is conceded defendant was represented by counsel at every point with regard to the stipulation  from the request for the polygraph examination through the completion of the examination. There is no claim either counsel or defendant failed to carefully review the stipulation. There is no claim the Assistant Prosecutor misled the defendant with regard to the stipulation or its ramifications. There is no claim counsel failed to explain the contents of the stipulation to defendant or that defendant failed to understand the document. In point of fact, the stipulation clearly and unequivocally provided, among other things, that:
1. The results of the examination would be admissible on behalf of either the Prosecutor or defense irrespective of the outcome of the examination.
2. The party offering the polygraph expert would be allowed to fully develop his expertise notwithstanding the agreement and acknowledgement of his expertise in the administration and analysis of the polygraph examination.
3. The opposing party expressly waived all objection to the admissibility of the expert testimony but reserved the right to cross-examine the expert as to his qualifications, the manner of testing, and the possibility of error.
4. Neither party would have the right to introduce another polygraph expert.
5. The stipulation related only to the examination noted therein. The results of any other polygraph examination are not admissible unless covered by a stipulation.
In paragraph 9 of the stipulation, defendant conceded he had taken a prior polygraph examination administered by the Office of the Public Defender.
Following the administration of the polygraph examination on February 28, 1986, the polygraphist on behalf of the Union County Prosecutor's Office opined that the defendant was deceptive when he denied his involvement in the robbery. Thereafter, both the polygraphist for the Public Defender and for the Prosecutor met and agreed as to the other's expertise, that both used the same technique, that each test was properly *186 administered and interpreted and that neither could offer an explanation for the contrary results obtained in each examination.
Defendant raised as a basis for this motion the following two points:
1. The results of all polygraph tests should be inadmissible because they are scientifically unreliable and will significantly hamper the search for truth. Consequently, regardless of the stipulation, the polygraph test conducted by the State is inadmissible.
2. Due process and fundamental fairness require this Court to admit the results of defendant's initial polygraph examination and to admit the testimony of defendant's polygraph expert.
Prior to 1972, the results of a polygraph examination were inadmissible in evidence in New Jersey Courts. In State v. McDavitt, 62 N.J. 36 (1972), the Supreme Court modified the rule against inadmissibility. Admissibility of polygraph evidence is "based upon acceptance by the Court of a specific, clear, unequivocal and complete meeting of minds and agreement between the State and an individual that an agreed polygraph testing will be received in evidence upon an offer by either party, irrespective of the result." State v. Smith, 142 N.J. Super. 575, 579 (App.Div.), certif. denied 72 N.J. 465 (1976). The current status of the law remains in this posture. Nevertheless, defendant seeks a hearing to establish through testimony of various experts what is already acknowledged and accepted by the courts of this State  that the results of a polygraph examination are not as reliable as other scientific proof. It is because of this unreliability, that a stipulation is required pursuant to State v. McDavitt, supra. Absent an appropriate stipulation, polygraph evidence is not admissible. State v. Hollander, 201 N.J. Super. 453 (App.Div. 1985). Accordingly, there is no need for testimony at a pretrial hearing on this point.
The stipulation entered into by the defendant and his attorney with the State forms the basis for the admission of the polygraph administered by the State. The stipulation demonstrates *187 the agreed admissibility of the polygraph results. The stipulation is the product of a knowing and intelligent waiver by defendant of his rights in compliance with State v. McDavitt, supra. Significantly, it was the defendant who initiated the request for a polygraph examination to be administered by the State. As mentioned, he had successfully taken a polygraph examination on a prior occasion which was administered by the Office of the Public Defender. There is not the slightest hint that the defendant's waiver was anything but clear and unequivocal, State v. Baskerville, 73 N.J. 230, 234 (1977). Moreover, I am satisfied it was "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938). There was a complete meeting of the minds as to the admissibility of the test results from the polygraph administered by the State.
The defendant was fully aware of his prior polygraph examination, which was the reason for the demand to the Prosecutor for the polygraph examination which is now at issue. As mentioned, defendant was fully represented by his attorney at every step of the way. His attorney was fully aware of the numerous rulings concerning stipulations with regard to polygraph examinations. To prevent the admissibility of the polygraph results pursuant to the stipulation would create an injustice. In effect, this situation is no different from the presentation of testimony which is anticipated to be favorable but in reality turns out to be damaging. The offering party is not permitted to strike such testimony because of the unfavorable results. There is a mutuality of expectation by both the State and defense to a fair trial. To permit the defense to block the admissibility of the evidence simply because of the adverse results of the examination is fundamentally unfair.
Defendant argues, in the alternative, that should the Court permit the introduction of the polygraph administered by the Prosecutor, then the Court should admit the unstipulated polygraph administered by the Public Defender and in any event, *188 should permit the defendant to offer testimony from his own expert as to the interpretation and meaning of the polygraph examination administered by the State. In this regard, defendant cites Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), and Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), to the effect that to deny either or both of these alternatives would violate his Sixth Amendment right to compulsory process and his Fourteenth Amendment right to due process of law. While Chambers acknowledges the fundamental right to present witnesses on behalf of an accused and notes that the Rules of Evidence cannot be mechanistically applied to defeat a fair trial, it is not instructive. The difficulty arises herein not because of a rigid application of evidential rules but because of the demand for a polygraph by defendant and the resulting stipulation.
The factual scenario presented in this matter is significantly different from Washington v. Texas, supra, where it was held a Sixth Amendment right to compulsory process was violated by a Texas procedural statute prohibiting persons charged as principals, accomplices or accessories in the same crime from being introduced as witnesses for each other. In Washington, the defendant did not have the ability to waive the right of compulsory process. It was taken away by a statute. In contra-distinction to Washington, this matter presents a situation where the defendant knowingly and intelligently waived his Sixth Amendment right to present evidence and additional testimony via an expert witness. Although due process requires that a defendant have assistance of counsel for his defense, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), that he be confronted with the witnesses against him, Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1985), that he be afforded a speedy, Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), and a public trial, In re Oliver, 333 U.S. 257, 86 S.Ct. 499, 92 L.Ed. 682 (1948) and the right to compulsory process to obtain witnesses in his favor, Washington v. Texas, *189 supra, these rights can be knowingly and voluntarily waived. Such a waiver is effected regularly when a defendant gives up these and his other constitutional rights by either pleading to an indictment or pleading pursuant to a plea agreement. The key to such a situation is a knowing and effective waiver of his constitutional rights, which is precisely the situation presented to the Court in this case.
In support of his position, the defendant relies heavily on the decisions in State v. Finn, supra, and State in re B.N., supra. The fact pattern presented in Finn is distinguishable. The defendant in Finn did not have the benefit of counsel when he entered into the stipulation. Here, as mentioned, not only did the defendant have the benefit of counsel, but it was his counsel who demanded the stipulation and assisted defendant through the stipulation. As well, the stipulation in Finn was not reciprocal. Here the stipulation is reciprocal in all regards. The results of the examination are admissible on behalf of either the prosecution or the defense. The stipulation speaks about "the party offering" the expert witness, and "the opposing party" waiving any and all objections as to the admissibility of such expert testimony. The stipulation speaks in terms that "neither party shall have the right to introduce another polygraph expert or any other person, other than the defendant himself, in reference to the original polygraph expert's testimony." Just as importantly, the stipulation indicates that "the results of any other polygraph examination shall not be admissible unless covered by a separate stipulation agreement." In setting forth the rights of the parties pursuant to the stipulation, the language carefully establishes the mutuality of the agreement, the reciprocity of the agreement and by its very terms establishes the fact that there was a meeting of the minds and an understanding among the signatories to the agreement.
State in Interest of B.N., supra, is distinguishable by its very terms and facts in that the stipulation did not contain a *190 clear and unequivocal waiver of defendant's right to present an expert to testify as to his conclusions and evaluations of data obtained by a stipulated polygraph examination.
As noted by the Appellate Division in State v. Hollander, supra, "... it is clear that the defendant's contention that rejection of the [prior polygraph] test violates his rights for compulsory process under U.S. Const., Amend. VI and N.J. Const., Art. I par. 10 is without merit. Defendant has no constitutional right to have inadmissible evidence admitted." Id., 201 N.J. Super. at 477. "If defendant wanted to use the test results he should of insisted on a stipulation allowing their use." Id.
The defendant, in effect, demands a different standard be applied because he is a defendant and because the results of the prior unstipulated polygraph were favorable. This position is without merit. "New Jersey has consistently rejected the admissibility of polygraph evidence in criminal cases, regardless of whether or not the results were favorable to a defendant." State v. Christopher, 149 N.J. Super. 269, 274 (App.Div. 1977). The only exception to this rule is when the parties enter into a stipulation and in such instances the stipulation is to be given effect. State v. McDavitt, supra, 62 N.J. at 46. Such evidence is inadmissible in the absence of an explicit stipulation. Although the Court is not bound by a stipulation on a matter or law which is contrary to controlling law on the subject, State v. Elysee, 159 N.J. Super. 380 (App.Div. 1978), such a consideration is not presented to the Court in this case. Fairness and justice dictate that this stipulation which was entered into all respects pursuant to State v. McDavitt, supra, be given effect. The results of the polygraph examination administered by the State pursuant to the stipulation shall be admissible. The expert polygraphist on behalf of the State who administered the examination shall be permitted to testify pursuant to the stipulation. Neither will the results of the polygraph examination administered by the Public Defender be admissible nor will an expert *191 on behalf of the defendant with regard to the results of the State's polygraph examination be permitted to testify.
NOTES
[1] As will be developed, neither State v. Finn, 175 N.J. Super. 13 (Law Div. 1980) nor State in the Interest of B.N., 167 N.J. Super. 370 (J. & D.Rel. 1979) addresses the issues presented.