STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
VINCENT CAPONE, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 26, 1987—Decided February 20, 1987.

Before Judges PETRELLA, GAYNOR and SCALERA.

*John H. Stamler,* Union County Prosecutor, attorney for appellant (*Thomas K. Isenhour,* Assistant Prosecutor, of counsel and on the letter brief).

*Flood* and *Basile,* attorneys for respondent (*Vincent W. Basile* of counsel and on the letter brief).

The opinion of the court was delivered by

PETRELLA, P.J.A.D.

The Union County Prosecutor appeals by leave granted from a March 26, 1986 order entered by the trial judge which permits defendant Vincent Capone, who was charged with aggravated sexual assault, to introduce at trial the results of an unstipulated polygraph examination, and requires the five year old victim to submit to a psychiatric examination before being allowed to testify as a witness.

■ We deal first with the judge's ruling requiring the victim to submit to a psychiatric examination, without any hearing or showing of necessity. That ruling is clearly erroneous in light of *State v. R.W.,* 104 *N.J.* 14, 22–23 (1986), which was decided by our Supreme Court subsequent to the March 26, 1986 order compelling the psychiatric examination. Hence, defendant's reliance on the decision in *State v. R.W.,* 200 *N.J.Super.* 560 (App.Div.1985), is to no avail. That portion of the order is vacated on the basis of the record presented. The trial judge shall determine the qualifications of the infant as a witness.

We turn now to the question of whether Capone should be permitted to introduce the results of an unstipulated polygraph

examination where the stipulation that was signed expressly precludes it. A brief recitation of the facts will be useful. The State charges that on October 21, 1985 defendant, who had the care of the four year old male child of a family friend, instructed the child to commit certain sexual acts. The child told his mother about this the next morning, and she then contacted the Elizabeth police department. Capone voluntarily accompanied police officers to the police department that day. He admitted taking care of the child the previous night, denied any sexual abuse, and agreed to take a polygraph examination, but stated that he wanted to speak with a lawyer first.

The record indicates that the next day an assistant county prosecutor was in contact with defendant's attorney, who stated that he recommended to his client that he cooperate and agree to the stipulation. Defendant had told his attorney he had nothing to hide. The assistant prosecutor then discussed the polygraph with defendant and his father. Immediately prior to the polygraph test the assistant prosecutor sat down with Capone and went over the terms of the stipulation with him. Capone expressed his understanding of it and his willingness to take the examination; he signed the stipulation. Paragraph 8 of the stipulation provides:

> This stipulation relates only to the examination to be conducted by the examiner noted herein. The results of any other polygraph examination shall not be admissible unless covered by a separate stipulation agreement.

Defendant argued to the trial court that there was inadequate explanation by the assistant prosecutor of the stipulation form; that he did not understand what he was signing; that his attorney was not aware of the provisions of the stipulation form, and the stipulation was never read word for word to him; and that the attorney did not fully apprise defendant of the ramifications of entering into the stipulation.

The trial judge granted defendant's motion to allow defendant to have a polygraph test taken by his own expert and offered into evidence, in addition to granting his motion to allow defendant's polygraph expert to testify with respect to the original examination. The State has not appealed from that

part of the ruling which allows defendant's expert to testify with respect to the original examination. The trial judge did not rule on that part of defendant's motion which sought to suppress the results of the polygraph examination on the basis that the stipulation was invalid. Hence, that issue is not properly before us, nor is the issue of knowing waiver.

The judge expressed concern that defendant's attorney was not present at the signing of the stipulation, and because one part of the certification of the assistant prosecutor who obtained the stipulation stated: "It is my recollection that I read the stipulation to him [defendant Capone] in its entirety and further explained its provisions to him." The judge relied on *State v. Finn*, 175 *N.J.Super.* 13 (Law Div.1980), which concluded that even if a waiver which precluded a defendant from obtaining his own polygraph expert to interpret the State-administered examination was knowingly and voluntarily made, it would be unenforceable because it violates principles of fundamental fairness. The judge here likewise determined that even if there was a "knowing waiver" one cannot waive his constitutional right to present witnesses. Thus, defendant could challenge the polygraph results and obtain and present new polygraph results despite the stipulation. Defendant relies on *State v. Finn* in his argument before us.

█ Historically New Jersey has been distrustful of polygraph evidence and tended to reject it. See, *e.g., State v. Carter*, 91 *N.J.* 86, 116 (1982); *State v. Walker*, 37 *N.J.* 208 (1962), *cert.* den. 371 *U.S.* 850, 83 *S.Ct.* 89, 9 *L.Ed.*2d 86 (1962); *State v. Cole*, 131 *N.J.Super.* 470 (App.Div.1974), certif. den. 68 *N.J.* 135 (1975). Thus, polygraph evidence is generally inadmissible regardless of whether it is favorable to a defendant. *State v. Driver*, 38 *N.J.* 255, 261 (1962); *State v. Hollander*, 201 *N.J.Super.* 453, 477 (App.Div.1985), certif. den. 101 *N.J.* 335 (1985). As stated in *State v. Christopher*, 149 *N.J.Super.* 269 (App.Div.1977), certif. den. 75 *N.J.* 24 (1977):

> The only exception to this rule occurs when the State and the defendant enter into a stipulation to have defendant submit to a polygraph test and have the

results introduced in evidence. In such instances effect is given to the stipulation and the polygraph evidence is held admissible. [149 N.J.Super. at 274.]

In *State v. McDavitt*, 62 *N.J.* 36, 46 (1972), the defendant and prosecutor stipulated to a polygraph examination after defendant stated in open court that he was willing to submit to a lie detector test. In holding the results admissible, the court said:

We conclude that polygraph testing has been developed to such a point of reliability that in a criminal case when the State and defendant enter into a stipulation to have defendant submit to a polygraph test, and have the results introduced in evidence, such stipulation should be given effect. Polygraph testing has sufficient probative value to warrant admission under these circumstances.

The court also noted that the stipulation must be clear, unequivocal, complete and entered into freely. *Ibid.*

The importance of a stipulation was underscored in *State v. Christopher, supra,* 149 *N.J.Super.* at 275, where the defendant sought to introduce unstipulated test results taken by the State which turned out to be unfavorable to it. We stated there that "we cannot find such evidence admissible in the absence of an explicit stipulation." We also noted in *State v. Hollander, supra,* 201 *N.J.Super.* at 478, that allowing results of polygraph tests to be admitted without a stipulation from both sides would inure only to the benefit of a defendant, because the State could never compel a defendant to take a polygraph test. See also *Williams v. State,* 275 *Ind.* 434, 417 *N.E.*2d 328, 332 (Ind.1981); *State v. Boileau,* 21 *Wash.App.* 259, 584 *P.*2d 473, 475 (Wash.Ct.App.1978).

The problem in the case before us is highlighted by the fact that a defendant cannot compel the prosecutor to consent to a polygraph examination. See *State v. Cole, supra,* 131 *N.J.Super.* at 472. Here, the judge below ordered that an unstipulated polygraph test would be admissible in evidence because the defendant has a right to present witnesses in his own behalf. Although it is true that a defendant has a constitutional right to present witnesses in his own behalf, it does not follow that polygraph examinations can be admitted into evi-

dence in the absence of a stipulation. Moreover, constitutional rights can be waived.[1] We view the statement in *State v. Finn* that there can be no waiver of the right of confrontation to be erroneous. No authority is cited for that proposition, and we disapprove of it.

Absent preclusive language in the stipulation, a different question might arise as to whether we should allow a defendant the option to obtain and utilize his own polygraph examination,

---

[1]There was no hearing on whether there was a knowing waiver. We disapprove of the broad language in *State v. Finn*, which implies that there cannot be a waiver of constitutional rights. There are many constitutional rights that a defendant in a criminal case may waive. For example, defendant may waive his right to counsel. *Moore v. Michigan*, 355 *U.S.* 155, 78 *S.Ct.* 191, 2 *L.Ed.*2d 167 (1957); *Johnson v. Zerbst*, 304 *U.S.* 458, 58 *S.Ct.* 1019, 82 *L.Ed.* 1461 (1938); *State v. Jenkins*, 32 *N.J.* 109 (1960).

There may also be a waiver of the right to trial by jury. *Patton v. United States*, 281 *U.S.* 276, 50 *S.Ct.* 253, 74 *L.Ed.* 854 (1929); *State v. Monroe*, 30 *N.J.* 160 (1959); *State v. Ciniglio*, 57 *N.J.Super.* 399 (App.Div.1959), certif. den. 31 *N.J.* 295 (1960).

A defendant may waive his Sixth Amendment right of confrontation. *State v. Sheppard*, 197 *N.J.Super.* 411, 436 (Law Div.1984), and his right to a suppression hearing which involves Fourth Amendment rights. See *R.* 3:5-7(f); *State v. Martin*, 87 *N.J.* 561, 566–567 (1981); *State v. Anepete*, 145 *N.J.Super.* 22, 25 (App. Div.1976); *State v. Jordan*, 115 *N.J.Super.* 73, 76 (App.Div.1971), certif. den. 59 *N.J.* 293 (1971).

A plea of guilty waives several federal constitutional rights: the Fifth Amendment privilege against compulsory self-incrimination; the right to trial by jury; and the right to confront one's accusers. *Boykin v. Alabama*, 395 *U.S.* 238, 246, 89 *S.Ct.* 1709, 1713, 23 *L.Ed.*2d 274, 281 (1969); *McCarthy v. United States*, 394 *U.S.* 459, 89 *S.Ct.* 1166, 22 *L.Ed.*2d 418 (1969).

A defendant can waive his constitutional right to remain silent. *State v. Kremens* 52 *N.J.* 303, 310–311 (1968), aff'd after remand 57 *N.J.* 309 (1971).

An accused can waive his right to a speedy trial. *State v. Davis*. 131 *N.J.Super.* 484, 498 (App.Div.1974).

An indigent accused can waive his right, which is of constitutional dimension, *Roberts v. La Vallee*, 389 *U.S.* 40, 88 *S.Ct.* 194, 19 *L.Ed.*2d 41 (1967), to a transcript at public expense. *State v. Morgenstein*, 147 *N.J.Super.* 234 (App.Div.1977).

Indeed, even errors of constitutional dimension in a trial do not necessarily require a reversal. *Chapman v. California*, 386 *U.S.* 18, 23–24, 87 *S.Ct.* 824, 827–828, 17 *L.Ed.*2d 705, 710 (1967), reh. den. 386 *U.S.* 987, 87 *S.Ct.* 1283, 18

subject to the Rules of Evidence and appropriate notice to the prosecutor. See *State v. Baskerville,* 73 *N.J.* 230 (1977) and *State in Interest of B.N.,* 167 *N.J.Super.* 370 (J & D.R.Ct.1979). In *State v. Baskerville,* our Supreme Court said:

> We leave for another day resolution of the question of whether, under a stipulation similar to the instant agreement, a defendant might be permitted to introduce evidence of results of a separate test administered by his own examiner. [73 *N.J.* at 234.]

In *Baskerville,* there was an ambiguity in the stipulation on whether defendant could obtain a polygraph expert of his own choice. The Supreme Court felt that its consideration of the issue was circumscribed by the factual context and the terms of the stipulation. (73 *N.J.* at 236).

■ This case differs from *Baskerville* in that here, as contrasted with the general language in that case, there is an express stipulation that no other polygraph examination be admissible unless covered by a separate stipulation agreement. We see no unfairness in this, because if the defendant wished to obtain an expert to conduct a subsequent examination he could have bargained for that in his stipulation. However, this cannot be done where the stipulation expressly precludes it and the language is clear, unambiguous and equally binds the State and the defendant. Under such circumstances the agreement should be enforced. We also note that *State v. Finn, supra,* whose broad language we have disapproved, did not address the question of a second polygraph test. It only allowed defendant to use an expert to challenge the testimony of the State's expert with respect to the stipulated test. But see *State v. McMahon,* 217 *N.J.Super.* 182 (Law Div.1986). More is involved here than being able to approve or object to the procedure involved. Without a stipulation a polygraph examination is not admissible.

Defendant argues that admission of the additional polygraph test results is essential to evaluate and weigh the importance of

---

*L.Ed.*2d 241 (1967); *Fahy v. Connecticut,* 375 *U.S.* 85, 86–87, 84 *S.Ct.* 229, 230–231, 11 *L.Ed.*2d 171, 173 (1963); *State v. Macon,* 57 *N.J.* 325, 338 (1971).

the examination as it pertains to the credibility of defendant's testimony. We note, however, that the trial judge's order allows testimony by defendant's own expert with respect to the examination previously conducted,[2] and this would appear to encompass evaluation of the State's polygraph examination and the use of the test to affect credibility. This appeal does not affect that portion of the March 26, 1986 order. However, defendant does not have the right to have evidence admitted which is either inadmissible, *State v. Hollander, supra,* 201 *N.J.Super.* at 477, or violative of a valid stipulation.

We reverse those portions of the March 26, 1986 order of the trial judge which compelled a psychiatric examination of the juvenile and which authorized defendant to offer another expert's polygraph examination results for which there was no stipulation. We remand for trial and further proceedings consistent with this opinion.

---

[2]It would seem that if defendant were allowed to present a subsequent and unstipulated polygraph test result which he obtained by use of his own expert, the questions would have to be similar to the State-administered examination for it to have any relevance to the expert's credibility, and the State should be furnished the appropriate background material and perhaps be allowed to have an observer present.