STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. PATRICK
JAMES POWELL, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 13, 1983—Decided November 2, 1983.

Before Judges MATTHEWS, GAULKIN and SHEBELL, J.S.C., t/a.

*Raymond J. Zeltner*, Assistant Prosecutor, argued the cause for appellant (*John H. Stamler*, Union County Prosecutor, attorney; *Maris Konray*, Assistant Prosecutor, on the brief).

*Edward P. Hannigan*, Assistant Deputy Public Defender, argued the cause for respondent (*Joseph H. Rodriguez*, Public Defender, attorney; *Stephen E. Serbe*, Assistant Deputy Public Defender, on the brief).

The majority opinion of the court was delivered by

GAULKIN, J.A.D.

The Union County Prosecutor brings this interlocutory appeal from an order dated April 30, 1982 suppressing the results of a polygraph examination taken by defendant. Judge McKenzie found that defendant did not have "full knowledge" of the consequences of submitting to a polygraph and stipulating that the results of the test would be admissible in court.

Defendant was arrested at the scene of a fire and charged with criminal trespass. A second individual, Julio Rojas, was also taken into custody and charged with arson. Defendant offered to take a polygraph to clear himself. The results of the lie-detector test, taken three days later, were unfavorable to him and defendant was indicted for arson. Prior to the test, defendant signed a stipulation, by which he agreed to submit to a polygraph examination and further agreed that the results of the test, if conclusive one way or the other, would be admissible in evidence at trial on behalf of either defendant or the State. The five-page stipulation identified Julio Rojas as the "defendant" and recited at length the rights and undertakings of "defendant." It was signed, however, by Powell as "defendant."

■ While the stipulation was explained in some detail to defendant, we are persuaded, as was Judge McKenzie, that the

State failed to show that defendant had "full knowledge" of the consequences of such a stipulation, as required by *State v. McDavitt*, 62 *N.J.* 36, 46 (1972). Defendant was offered the opportunity to consult with counsel, but *"McDavitt* contemplates much more than a *Miranda*-type ... warning and waiver situation." *State v. Smith*, 142 *N.J.Super.* 575, 579 (App.Div.), certif. den., 72 *N.J.* 465 (1976). Polygraph results are admissible in evidence only upon "a specific, clear, unequivocal and complete meeting of minds and agreement between the State and an individual that an agreed polygraph testing will be received in evidence upon an offer by either party, irrespective of the result." *Id.*

Whether these requirements were met in this case is primarily a factual determination. Judge McKenzie observed that defendant "appear[ed] to be of low intelligence" and that he was "very slow in his verbalization of his ideas, both in the quickness of his response and also in his saying, in his verbalization of the answers." He noted the technical defect in the stipulation which named Rojas as the defendant. Judge McKenzie also found that defendant's prior experience and "street knowledge" led him to believe that polygraph results were not admissible, notwithstanding the prosecutor's statement that they were. Based on all these circumstances, Judge McKenzie concluded that, although defendant "did voluntarily waive counsel," he executed the stipulation "without actual knowledge of the consequence of the polygraph examination...." That factual finding is adequately supported by the record. *State v. Johnson*, 42 *N.J.* 146, 162 (1964).

In finding that the stipulation is not enforceable against defendant, we do not hold that the State has a burden to show that a defendant believes what he is told. The focus is not on what defendant believed, but on what defendant understood. Judge McKenzie's factual determinations support and justify

the conclusion that a clear and unequivocal meeting of the minds was not shown in this case.

The April 30, 1982 order is affirmed.

SHEBELL, J.S.C. t/a (dissenting).

I am constrained to disagree with the result reached by my colleagues. I am unable to support their exclusion of the polygraph results which were given after a knowing and intelligent waiver by defendant of his right to counsel and upon a stipulation that was fully understood by him.

It is to be pointed out initially that the Public Defender accused the State of a violation of DR 7–104(a)1, alleging that he communicated with the defendant knowing him to be represented by a lawyer without the prior consent of the lawyer. The trial court however specifically found that the State had not violated that rule because the assistant prosecutor had no knowledge that counsel had been assigned to the defendant on the day of the polygraph test. In fact the defendant himself was unaware that he had counsel. The identical situation existed in *State v. McKnight*, 52 *N.J.* 35, 42 (1968). Then Chief Justice Weintraub pointed out that neither defendant nor the prosecutor's office knew that an attorney had been appointed for defendant at the time that the prosecutor met with the defendant and advised him of his right to counsel and obtained a statement from him. That court held that where there was no purpose to interfere with the relationship of attorney and client and no seeking to overreach defendant in any way, that the State cannot be charged with improper conduct. The findings of the court below in this case are quite specific that the State was not guilty of misconduct and that the defendant intelligently and knowingly waived his right to counsel.

The trial court also found that the State had gone over the polygraph stipulation in great detail with the defendant and had thoroughly conveyed its meaning to the defendant. More im-

portantly, the court found that the defendant understood what was told him. The sole basis for the suppression of the evidence by the trial court was that while defendant understood the stipulation of admissibility he did not believe it. Defendant testified that he was informed by fellow inmates in the Union County jail that the results of polygraph tests could never be used in court. Defendant chose to accept the inmates' view of the law in preference to the correct explanation clearly given to him by the prosecutor. The court imposed upon the State in this case the burden of not only showing that the defendant knew and understood his rights and the explanations given to him concerning the stipulation agreement surrounding the test and its admissibility but also the burden of proving that the defendant believed what was explained to him. This question never arose when the defendant was going over the waiver of counsel and polygraph stipulation as defendant made no disclosure of his alleged belief as to its inadmissibility. He alone knew he was going to hold that belief as outweighing the direct and clear advice given to him by the assistant prosecutor. Again, the case of *State v. McKnight, supra,* at 46, provides guidance. In that case defendant said that his waiver was not intelligently made because he thought his word could not be used against him unless it was reduced to writing and signed by him. The court found that contention to be absurd and unworthy of consideration in light of the fact that he was told specifically that what he said could be used against him. In this case it was Powell who initiated the idea of a polygraph examination and he had in fact taken a polygraph test in another county on a prior occasion. The court found that the assistant prosecutor did all that he could to explain the ramifications of the stipulations to Powell and there is no allegation that the explanation given was in any way deficient. It was noted by the court that there was nothing more which the State could have done in this matter.

The requirements of *State v. Smith,* 142 *N.J.Super.* 575, 597 (App.Div.1976), certif. den. 72 *N.J.* 465 (1976) and *State v. McDa-*

*vitt,* 62 *N.J.* 36, 46 (1972) that there be a complete meeting of the minds as to the admissibility of the test results has been satisfied. To obtain this meeting of the minds the State did everything known to the law to ensure that full information was given to defendant and that his acknowledgment was obtained as to his knowledge and understanding. To hold that the State has the burden of not only making a defendant understand but also believe is not a burden which is at all workable from the standpoint of practicality. It would make no difference in any case whether a defendant was represented by counsel, whether his statement was in writing, whether the stipulation was signed, sealed and delivered or anything else that the law could think of to ensure that both sides would be dealt with fairly. A defendant after such an agreement need do nothing more than think of any one of an infinite number of reasons that led him to a lack of belief in what was told him and thus escape the consequences of his acts. Our Supreme Court has rejected defendant's subjective beliefs in waiver cases as not relevant when a proper knowing and understanding waiver has been demonstrated. *State v. McKnight, supra,* 52 *N.J.* 46. The court stated a waiver is

> no less 'voluntary' and 'knowing' and 'intelligent' because he misconceived the inculpatory thrust of the facts he admitted, or because he thought what he said could not be used because it was only oral or because he had his fingers crossed, or because he could well have used a lawyer. *State v. McKnight, supra,* at 55.

There is no doubt that the State has demonstrated the defendant understood what he was told. *State v. Fussell,* 174 *N.J.Super.* 14, 21 (App.Div.1980). I cannot now accept the imposition of the burden on the State to demonstrate that a defendant not only fully understands what he is told but also believed it. I question whether in this case it is a matter of "believing" as opposed to choosing to give greater weight to what someone else has told him. I would not hesitate in a case where a defendant indicated to the State that he had doubt or question concerning his rights or the agreement to afford him

the benefit of that doubt. I am not however about to make the State a mindreader and to impose upon it the burden of proving a defendant's belief which is in fact an impossible task.

For the above reasons I would reverse the decision of the trial court and permit into evidence the results of the polygraph test.